Filed 12/18/20

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| In re A.G., a Person Coming Under the Juvenile Court Law. | H047951 (Monterey County Super. Ct. No. 18JD000104) |
|---|---|
| MONTEREY COUNTY DEPARTMENT OF SOCIAL AND EMPLOYMENT SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> S.B., <br><br> Defendant and Appellant. | |


On July 24, 2018, the Monterey County Department of Social and Employment Services (Department) filed a petition under Welfare and Institutions Code section 300, subdivisions (b)(1)[1] relative to a boy, A.G. (the minor), who was then four years old. S.B. (mother) is the minor's mother, and the minor's father is deceased. The minor was placed into protective custody after mother, twice in successive days, drove a car in which the minor was a passenger while she was under the influence. The Department alleged that mother had a "severe" ongoing substance abuse problem that prevented her from adequately caring for the minor. The juvenile court declared the minor a dependent

---

[1] Further statutory references are to the Welfare and Institutions Code unless otherwise stated.

child, and he was placed in out-of-home foster care. Mother received family reunification services, which were terminated at the 12-month review hearing in September 2019, when the minor was five years old. At that time, the court scheduled a selection and implementation hearing pursuant to section 366.26 (366.26 hearing).

At the initial 366.26 hearing on January 14, 2020, mother requested a contested hearing on the potential application of two statutory exceptions to adoption and the termination of parental rights, namely, (1) the beneficial parental relationship (see § 366.26, subd. (c)(1)(B)(i)), and (2) the sibling relationship (see *id.*, subd. (c)(1)(B)(v)). The juvenile court requested that mother provide an offer of proof concerning the evidence she intended to present in support of the two exceptions. Mother, through her counsel, made an oral offer of proof, and the court granted mother leave to file a supplemental written offer of proof. Mother submitted a written offer of proof, which was opposed by the Department and by counsel for the minor. At a further hearing on January 28, 2020, the court found mother's offer of proof insufficient and denied her request for a contested hearing on her claimed exceptions to adoption. After conducting a 366.26 hearing, the juvenile court found the minor's continued out-of-home placement was necessary, the minor was adoptable; and he was placed in a prospective adoptive home. The court ordered that adoption was the permanent plan for the minor, and it terminated mother's parental rights.

Mother filed an appeal from the order after the 366.26 hearing. She argues that the juvenile court denied her due process by rejecting her request for a contested hearing concerning the potential applicability of the parental relationship exception to adoption.[2] Mother contends that her written offer of proof was a sufficient showing of proposed evidence of her regular contact with the minor and the existence of a beneficial parent-

---

[2] Mother has expressly waived any appellate challenge to the court's ruling denying a contested hearing specifically as to the sibling relationship exception.

child relationship to warrant the granting of a hearing on the parental relationship exception.

The juvenile court may, in its discretion and consistent with due process, condition a contested hearing concerning the parental relationship exception upon a parent's submission of an offer of proof. (*In re Tamika T.* (2002) 97 Cal.App.4th 1114, 1122 (*Tamika T.*).) The parent's offer of proof must be adequate in scope and must be specific. We hold that the offer of proof must address two components of the parental relationship exception, namely, the parent's regular contact with the child, and the existence of a beneficial parent-child relationship. We hold further that a parent's offer of proof need not address the third component of the parental relationship exception, namely, " 'whether the existence of that relationship constitutes "a compelling reason for determining that termination would be detrimental to the child." ' [Citations.]" (*In re Caden C.* (2019) 34 Cal App.5th 87, 104 (*Caden C.*), review granted Jul. 24, 2019, S255839.) A legally sufficient offer of proof by a parent must also be one that is "specific, setting forth the actual evidence to be produced, not merely the facts or issues to be addressed and argued." (*Tamika T., supra*, at p. 1124.) Here, the scope of mother's written offer of proof was adequate, addressing both her regular contact with the minor and the existence of a beneficial parent-child relationship. And her proffer, while imperfect, included some relevant, admissible evidence in support of those two components of the parental relationship exception. Indeed, the Department conceded below that mother had satisfied the regular contact element.

Although at the stage of dependency proceedings involving the 366.26 hearing, "the focus" is upon "the needs of the child for permanency and stability" (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309), it is also in the child's best interests for the parent to be given the opportunity to establish the parental relationship exception to adoption through probative, relevant, and admissible evidence as proposed in an offer of proof. Because the termination of parental rights is at stake, the juvenile court, particularly where the

3

parent's regular contact with the child is not in dispute, should exercise caution before denying the parent a contested hearing and should therefore construe the parent's offer of proof liberally in favor of its sufficiency.  (See *In re Grace P.* (2017) 8 Cal.App.5th 605, 614-615 (*Grace P.*).)

It is not clear from the record here whether the juvenile court properly exercised its discretion (1) by requiring that mother address in her offer of proof only two of the three components of the parental relationship exception, or required her to address all three components; and (2) in addressing whether the proffer met the specificity requirements of *Tamika T.*, *supra*, 97 Cal.App.4th at page 1124, construed the offer of proof liberally in favor of deeming it sufficient to warrant the granting of a hearing.  We conclude that, in the interests of justice and in furtherance of the minor's best interests, the juvenile court should further consider mother's request for a contested hearing concerning the parental relationship exception to adoption.

We will therefore reverse and remand the case to the juvenile court with directions that it, consistent with this opinion, further consider the legal sufficiency of mother's offer of proof in support of the beneficial parental relationship exception.  The court shall permit further argument and, in its discretion, may allow mother the opportunity to amend her prior offer of proof with any specific evidence she believes she can produce that is consistent with her prior oral and written offers of proof to assist the court's determination of whether her proffer is "specific, setting forth the actual evidence to be produced, not merely the facts or issues to be addressed and argued."  (*Tamika T.*, *supra*, 97 Cal.App.4th at p. 1124.)  If the juvenile court concludes that the denial of a contested hearing is appropriate, in order to permit meaningful appellate review, it shall specify its reasons for determining that mother's offer of proof is not legally sufficient.

# I.    FACTS AND PROCEDURAL HISTORY

## A.    The Minor's Detention (July 2018)

On July 24, 2018, the Department filed a petition under section 300, subdivision (b)(1) relative to the minor, who was then four years old.  Prior to the Department's intervention, the minor was living with mother.  The minor's father, J.G., was deceased.  Mother had two older daughters who resided with the maternal grandparents at the time the petition was filed; they did not need the protection of the juvenile court.

It was alleged that mother had an ongoing substance abuse problem.  Since February 2018, she had been living at Pueblo Del Mar, a sober living environment/transitional housing program.  She had tested positive for amphetamine and methamphetamine on July 9, 2018, and she was reportedly associating with people using drugs.  On July 19, mother drove under the influence with the minor in the car.  She had been observed smoking methamphetamine that evening.  The next day, mother drove under the influence to Genesis House, a drug treatment facility, again with the minor in the car; she had a container of vodka and Kool Aid in the car.  It was also reported that mother left the minor alone in the car on occasions to go gambling.  The Department noted that the minor had been observed to mimic mother's aggressive behaviors by "telling people to 'fuck off' and 'flipping them off.' "

The Department met with mother at Genesis House on July 20.  Mother presented as very agitated, and she "was belligerent and uncooperative with the social worker."  She admitted that she had smoked methamphetamine the night before and had drunk alcohol that morning.  The Genesis House program director indicated that mother would be allowed into the residential treatment program—in which mother had previously participated before transitioning to Pueblo Del Mar—but that the minor could not stay with her because she was unable to care for him.

It was also reported that there had been 10 referrals to the Department regarding the family over the past 10 years, due to mother's substance abuse and untreated mental health issues.  Her problems included use of methamphetamine while pregnant with the minor, driving under the influence with her children in the car, and aggressive behavior in the children's presence.

The Department summarized:  "The mother has a severe substance abuse history that impairs her ability to provide adequate care, supervision and protection for the child.  Despite completing drug treatment, the mother placed the child under great risk of physical harm or death by driving with him while she was under the influence of alcohol and other drugs on at least two occasions."  The Department advised further that mother had a criminal history (unlicensed driving, transportation/sale of controlled substances, domestic violence, and forgery) that impaired her ability to adequately care, supervise, and protect the minor.

On July 25, the juvenile court ordered the minor detained with temporary placement vested with the Department.

### B.      Jurisdiction/Disposition Hearing (August 2018)

In its jurisdiction/disposition hearing report, the Department reported that the minor was residing with a foster family in Salinas that was a concurrent home, and that he appeared to be comfortable in that placement.  The minor was able to express himself well for a four-year-old, and he indicated that mother was "the 'only one there for [him]' and that he look[ed] forward to his visits to give his mother 'huggies and kisses.' " Supervised visitation between mother and the minor had gone well, and after the initial visit, the Department increased visitation to twice a week for a total of two hours.  Mother arrived on time for the visits and came prepared with snacks and activities.  She had demonstrated that she had good parenting skills when she was sober, and that she appeared to have a healthy attachment to the minor.  Mother also requested that the minor

6

be permitted to visit her two half-sisters, and the Department was proceeding to schedule such visitation.

It was reported that mother had a good relationship with her counselors at Genesis House, and she was attending Narcotics Anonymous (NA) meetings.  She had tested negative for methamphetamine on August 15.  Her counselor advised that mother appeared to be motivated to make necessary changes in her life.  From mother's history and the case worker's interview with mother, however, it appeared mother "ha[d] developed little insight into what helps her to remain clean and sober . . . .  The mother attributes her own will and desire to make changes as the sole reason for her sobriety, which is concerning as the mother was unable to share coping methods learned throughout her previous stays in residential treatment."

At the uncontested jurisdiction/disposition hearing on August 28, the juvenile court found the allegations of the petition true and that the minor was a person described under subdivisions (b)(1) of section 300.  The juvenile court ordered the minor placed in the care, custody, and control of the Department, with mother to receive visitation and family reunification services.

### C.    Six-Month Review (February 2019)

In a six-month review hearing report, the Department advised that the minor continued to live in a concurrent foster home in Salinas.  The minor said that he felt happy in his placement but that he wanted to live with mother.

The Department reported that mother had been discharged from the sober living environment (SLE) in which she had resided "on February 14, 2019[,] following numerous relapses."  While staying at Genesis House, she had negative drug tests in 2018 on September 15 and October 6.  She had failed drug tests on November 21, 2018, January 14 and 29, 2019, and February 12, 2019, testing positive for methamphetamine, and she had failed to appear for a scheduled drug test on February 4, 2019.  She attended

NA meetings inconsistently,[3] telling the social worker on different occasions that she did not see the utility of NA meetings and indicating the 12-Step Program "doesn't work." The social worker reported that "mother has stated she recognized her triggers and 'knows what to do'[;] however[, she] has not been able to demonstrate these skills . . . [On] January 29 2019, the Department talked with the mother regarding the importance of sharing with the team what would work to help her stay sober[;] however, she was unable to vocalize any strategies."

Mother had completed a mental health assessment in October 2018. She "was diagnosed with Major Depressive Disorder and Substance Abuse Disorder." Mother was assigned to a therapist and attended five sessions between October 23 and December 21, 2018. After the therapist returned from a leave of absence, mother failed to appear for three January appointments.

Mother completed a parent education group course in December 2018. The Department advised that mother "had maintained [throughout the review period] strong communication with [the case worker] as she often call[ed] and text message[d] multiple times per week sharing her day-to-day activities and struggles."

Mother attended supervised visits with the minor two times per week, having progressed from once a week in October 2018 after completing the Genesis House recovery program. The visits had gone well, and mother had been observed validating the minor's feelings and engaging in age-appropriate activities with the minor, including reading, drawing, and playing. Visits were moved to the maternal grandmother's home in November 2018 to permit visits with the minor's two sisters. Because of mother's

---

[3] The records indicated mother's attendance at meetings as follows: July 2018 (8); August 2018 (33); September 2018 (24); October 2018 (13); November 2018 (7); December 2018 (2); January 2019 (0); February 2019 (7).

relapses, the Department in February 2019 modified visitation to resume fully supervised visits.

The Department concluded that mother had not shown she was motivated to follow through with her case plan in that, although she acknowledged her problems with methamphetamine and alcohol, she had failed to actively participate in the recovery services available to address those problems. It recommended that the minor continue in out-of-home placement, and that mother's reunification services continue.

At the six-month review hearing on February 26, 2019, the juvenile court adopted the Department's recommendations and found that continued need for protective care of the minor was required.

### D.    Twelve-Month Review (September 2019)

In the Department's 12-month review hearing report, it advised the court that the minor continued to reside and do well in a concurrent licensed foster home in Salinas. He had expressed feelings of being happy in his foster home. The minor participated in weekly therapy. It was reported that he was " 'preoccupied with his mother's well-being' and ha[d] taken a role of being the caregiver to his mother as he [sought] reassurance that she [would] be safe once visits [were] over." The Department also reported that the minor had "struggle[d] with trusting adults" and had "difficulty expressing his emotions and feelings during therapy."

On March 20, 2019, while mother was staying at Genesis House, she had a negative drug test. She left the facility shortly afterward. After the case worker sent mother a request for a random drug test on March 28, mother responded that she would not submit to a test because she had used drugs on March 27 after an argument with her parents. Further, mother refused to submit to a random drug tests on April 11 and June 4, admitting that the tests were " 'going to be dirty.' " Mother again refused to participate in random drug tests on July 2 and 25, and she refused to submit to a hair follicle screening on July 16. Effective August 6, mother had been living at a Salinas in-patient

9

recovery facility, Door To Hope. Mother completed the hair follicle screening on August 8 with results that were inconclusive for amphetamines and methamphetamines. Mother provided the Department with drug screen results from Door to Hope on August 11 showing negative results for all substances. At the time, mother was attending four to six NA/AA (Alcoholics Anonymous) meetings per week.

The Department reported that mother had been assigned to a Children's Behavioral Health therapist, but that her attendance had been " 'spotty.' " She had failed to show up for appointments for several weeks during the review period. Mother and the therapist agreed that therapy would not occur if mother were under the influence; mother reported that several sessions did not take place because of this agreement. The Department reported that mother was not always honest with her therapist regarding her drug use.

At an April 15 team meeting, the Department advised mother of its concerns regarding the legal time frame mother had with respect to the dependency proceedings and her lack of commitment to available recovery services. Mother told the Department that " 'there is not much progress' " to report concerning her sobriety. When asked what the Department could do to support her, mother responded " 'there's nothing you guys can do[;] you have done enough.' " She also told the representatives of the Department: " 'I am not doing another program. Otherwise I would live at a fucken program, hearing the same shit over and over, doesn't help me . . . meetings don't work for me . . . I don't have to stay clean to get my son[.] I am not going to jail; I am not on probation. . . .' "

In a team meeting on July 16, the social worker observed that mother "appeared to be in a better space as she was alert and engaged in discussion topics, and [she] was open to feedback about the Department's concerns regarding her lack of engagement in recommended services during this dependency case." Mother advised that she had been " 'clean' since July 4, 2019." She had not been going to meetings, but she said she "was 'going to try.' " The Department representatives advised mother at the meeting that

"based on the mother's inconsistencies in recovery services throughout the dependency case, and continued relapses, the Department had no option but to recommend termination of reunification services."

During the review period, mother generally had two supervised visits per week with the minor. Mother complained frequently about the visits being supervised, and her visits never progressed to unsupervised status. The Department reported that mother struggled to read the minor's cues, having often brought up the topic of his deceased father, which visibly upset the minor. Mother was reported to have left the minor unattended; she had also fallen asleep during various visits in February through May 2019. The Department advised that mother did not provide appropriate structure during the visits for most of the review period, largely leaving the minor to entertain himself. When the visitation supervisor provided feedback to mother, she often reacted angrily and critically in front of her son, making negative remarks such as " 'CPS are a bunch of assholes' " and " '[t]hese visiting moms are disgusting.' "

Mother missed consecutive visits for two weeks in May, and the Department reduced visits to once per week until mother improved her behavior during visits. On June 4, the visitation supervisors were required to intervene after the minor took a lighter from mother's purse. Mother told the minor, " '[T]here's nothing wrong with that.' " At no time did mother tell the minor that he should not touch the lighter. During the same visit, mother brought a pair of "play handcuffs to play with her son pretending to be arrested, saying, 'I didn't do it.' " The Department noted that mother had been more attentive during her visits in August, and she provided more structured activity for the minor.

Based upon mother's long history of substance abuse, her inconsistent participation in services, her lack of motivation in following through with her case plan, and her inability to recognize and take responsibility for her actions during the

11

dependency, the Department recommended that the court terminate mother's reunification services, and that it reduce supervised visitation to once a month.

The juvenile court conducted a contested 12-month review hearing on September 20, 2019. The minor was five years old at the time. Mother submitted, inter alia, two letters from Doors to Hope and a letter from her therapist noting mother's progress in undergoing treatment, and drug tests dated August 11, 15, 18, and 26 indicating negative results. The juvenile court adopted the Department's recommendations. It found that (1) the Department had provided reasonable services, (2) mother had failed to participate regularly in a court-ordered treatment plan, (3) her progress toward alleviating or mitigating the causes that had necessitated the minor's placement had been minimal, (4) the minor's continued out-of-home placement was necessary, and (5) the minor's return to the home would create a substantial risk of detriment to his safety, protection, or physical or emotional well-being. The court terminated mother's reunification services, and it scheduled a 366.26 hearing for January 14, 2020.

### E.      Department's Section 366.26 Report (December 2019)

The Department reported in connection with the 366.26 hearing that the minor continued to do well in his placement in a Salinas concurrent foster home and was comfortable living with his foster family. The minor knew that "he [was] in a nurturing and caring home environment." The Department opined that the prospective adoptive parents had "continuously met all of [the minor's] physical, social, and emotional needs." The Department advised that the minor was too young to understand the concept of adoption. He "continue[d] to hope to return to the care of his mother, but he seem[ed] to understand that he [would] stay with the prospective adoptive parents."

During the review period, mother's supervised visits with the minor "taper[ed] down to once a month." Mother had been "appropriate" during the visits, and she had been making a better effort in planning for the visits.

12

The Department recommended that the parental rights of mother be terminated, and that a permanent plan of adoption for the minor be established.

### F.     Hearing Pursuant to Section 366.26 (January 2020)

#### 1.     Initial Hearing

At the initial hearing on January 14, 2020, mother requested that the case be set for a contested hearing, her counsel indicating that mother was asserting the applicability of the beneficial parental relationship and the sibling relationship exceptions to adoption. The court, at the Department's request, required that mother submit an offer of proof in support of her claim that these exceptions to adoption applied.  Counsel stated that (1) mother had raised the minor from birth to the time of his detention; (2) the minor had "learned very definite skills from the mother"; (3) mother read to the minor, took care of him, and nurtured him; (4) the minor was "very enthusiastic" about his mother in December, repeatedly asking when he could go home; and (5) the minor would benefit from a continued relationship with his siblings.  The juvenile court asked if there were specifics that counsel could provide in his offer of proof.  Mother's counsel responded that he had "made preliminary inquiries" and "begun [his] interviews," and he anticipated that he could provide more specifics after further inquiries and interviews.[4]  The court made a finding that the minor was adoptable.  But it granted mother's counsel a two-week continuance to afford him "an opportunity to present his specific articulable offer of proof" in writing five days before the hearing to support mother's claimed exceptions to adoption.

#### 2.     Mother's Written Offer of Proof

Mother's written offer of proof submitted on January 23, 2020, identified nine witnesses who would be available to testify at the 366.26 hearing concerning the

---

[4] Mother's counsel was substituted as attorney of record on December 30, 2019, approximately two weeks before the initial 366.26 hearing.

beneficial parental and sibling relationship exceptions to adoption.[5]  As discussed in greater detail, *post*, the witnesses identified and their proposed testimony were (1) mother, regarding her predetention relationship with the minor, activities they engaged in together, their close relationship, and her continuous contact with the minor during the proceedings through visitation; (2) Janet B., the maternal grandmother, concerning the close relationship between mother and the minor; (3) Robert B., Maternal grandfather, a reiteration of Janet B.'s testimony; (4) Ar. B. (age 7), the minor's sister, concerning the minor's attachment with mother; (5) Al. B. (age 13), the minor's sister, concerning the minor's attachment with mother; (6) Michael S., a friend of mother's during her predetention treatment, regarding the close relationship between mother and the minor; (7)  Brittney O., who was part of mother's support group, regarding mother's commitment to sobriety; (8) Katlin B., a member of mother's support group, who would offer testimony additional to that provided by Michael S. and Brittney O.; and (9) Betsi Andrade, a therapist who had provided counseling services to Al. B. and Ar. B., regarding the relationship between the minor and mother, and concerning the potential harm resulting from the permanent separation of a child from his parent, where they are bonded or attached.

### 3.    *Responses to Offer of Proof*

The Department filed a written response, arguing that mother's written offer of proof was inadequate to require a contested hearing.  The Department asserted the offer of proof did "not provide actual evidence to be produced . . . and primarily [gave] [conclusory] and vague statements about the proffered witnesses' testimony."  It argued

---

[5] Portions of mother's offer of proof related to her claim that the sibling relationship exception to adoption applied to her circumstances.  As noted (see fn. 2, *ante*), mother has expressly waived any challenge on appeal to the court's ruling, insofar as it deprived her of a contested hearing as to the sibling relationship exception.  We will therefore limit our discussion in this opinion regarding mother's offer of proof to the beneficial parental relationship exception.

14

further that in some cases, the evidence proffered by mother was inadmissible due to relevancy, speculation, or lack of foundation.

The minor also submitted a written response, arguing that mother's offer of proof was insufficient. The minor asserted that mother's prior relationship with the minor was not relevant; rather, it was "the nature and quality of the present relationship and the detriment to [the minor] presently if [mother's] parental rights are terminated" that were the relevant questions. The minor argued further that therapist Andrade's prospective opinion testimony concerning potential harm to the minor in severing the relationship with his siblings would be speculative as she had no direct dealings with the minor. He contended that the offer of proof provided no prospective evidence supporting the conclusion that maintaining mother's parental rights outweighed the benefits to the minor of adoption.

### *4.     Further 366.26 Hearing*

The juvenile court conducted a further 366.26 hearing on January 28, 2020. The minor was over five and one-half years old at the time. Both before hearing argument of counsel and after such argument, the juvenile court found that mother's offer of proof was insufficient to warrant the granting of an evidentiary hearing concerning the beneficial parent-child and sibling relationship exceptions to adoption. The court noted that it "[understood] that *Tamika T.* says that the offer of proof must be specific[,] setting forth the actual evidence to be produced and not merely the facts or issues to be addressed." (See *Tamika T.*, *supra*, 97 Cal.App.4th at p. 1124.) The juvenile court concluded that mother's offer of proof provided "categories of information" and "issues that would be addressed . . . without the specific articulable facts that mother would need to be able to raise to meet her burden of proof." It therefore held that mother's offer of proof had not satisfied the *Tamika T.* requirements for the court to order a contested hearing.

15

The court received the Department's section 366.26 report into evidence, and it requested updates to the report. The minor's counsel stated that the minor had recently come back from a trip with his foster family to Samoa; the minor was able to relate the experiences he had on the trip and the people he met there; the minor had recently moved with his foster family to San Diego; the minor stated that he was happy; and the minor's counsel indicated that the minor appeared to be happy and well-adjusted.

The juvenile court adopted the findings proposed by the Department, including the findings that the minor's continued out-of-home placement was necessary, the minor was adoptable; and that he was placed in a prospective adoptive home. The court ordered that adoption was the permanent plan for the minor, and it terminated mother's parental rights.

Mother filed a timely notice of appeal from the order after the 366.26 hearing.

## II.    DISCUSSION

### A.    Hearings Under Section 366.26

#### 1.    *Generally*

After it has been adjudicated that a child is a dependent of the juvenile court, the exclusive procedure for establishing the permanent plan for the child is the selection and implementation hearing as provided under section 366.26. The essential purpose of the hearing is for the court "to provide stable, permanent homes for these children." (*Id*., subd. (b); see *In re Jose V.* (1996) 50 Cal.App.4th 1792, 1797.) There are seven statutory choices for the permanency plan; the preferred choice is adoption, coupled with an order terminating parental rights. (§ 366.26, subd. (b); see also *In re Celine R.* (2003) 31 Cal.4th 45, 53 ["Legislature has thus determined that, where possible, adoption is the first choice"]; *ibid*. [where child is adoptable, "adoption is the norm"].)[6] The court selects this

_____

[6] The seven choices to be made by the juvenile court at the 366.26 hearing are, in order of preference, (1) placement of the child for adoption and terminating parental rights; (2) ordering "the plan of tribal customary adoption" without termination of

option if it "determines . . . by a clear and convincing standard, that it is likely the child will be adopted." (§ 366.26, subd. (c)(1).)

Thus, at the 366.26 hearing, "in order to terminate parental rights, the court need only make two findings: (1) that there is clear and convincing evidence that the minor will be adopted; and (2) that there has been a previous determination that reunification services shall be terminated. . . . '[T]he critical decision regarding parental rights will be made at the dispositional or review hearing, that is, that the minor cannot be returned home and that reunification efforts should not be pursued. In such cases, the decision to terminate parental rights will be relatively automatic if the minor is going to be adopted.' [Citation.]" (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 249-250

"If the court determines it is likely the child will be adopted, certain prior findings by the juvenile court (e.g., that returning the child to the physical custody of the parent would create a substantial risk of detriment to the physical or emotional well-being of the child) shall constitute a sufficient basis for the termination of parental rights unless the juvenile court finds one of six specified circumstances in which termination would be detrimental [to the child]." (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1522-1523, citing § 366.26, subd. (c)(1).)[7] An exception to adoption provided by statute will not be found by the juvenile court unless it "finds a compelling reason for determining that

---

parental rights; (3) appointment as legal guardian(s) the relative(s) with whom the child resides at the time of the hearing, (4) without terminating parental rights, identification of adoption as the permanent placement goal where termination of parental rights would not be detrimental to the child and adoption is a probability but the child may prove difficult to place for adoption; (5) appointment of a nonrelative legal guardian for the child; (6) ordering the permanent placement of the child with a fit and willing relative, subject to periodic reviews; and (7) ordering that the child remain in foster care with periodic reviews. (§ 366.26, subd. (b)(1)-(7).)

[7] *In re I.W.*, *supra*, 180 Cal.App.4th 1517 was recently disapproved on another ground. (See *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.)

17

termination would be detrimental to the child due to one or more of the [six statutory] circumstances." (§ 366.26, subd. (c)(1)(B).)[8]

## 2. *Parental Exception to Adoption at 366.26 Hearing*

The six specified circumstances in section 366.26, subdivision (c)(1)(B) are "actually, *exceptions* to the general rule that the court must choose adoption where possible." (*In re Celine R.*, *supra*, 31 Cal.4th at p. 53, original italics.) They " 'must be considered in view of the legislative preference for adoption where reunification efforts have failed.' [Citation.] At this stage of the dependency proceedings, 'it becomes inimical to the interests of the minor to heavily burden efforts to place the child in a permanent alternative home.' [Citation.] The statutory exceptions merely permit the court, in *exceptional circumstances* [citation], to choose an option other than the norm, which remains adoption." (*Ibid.*, original italics.)

---

[8] The six statutory circumstances under which the juvenile court can find as a "compelling reason" that termination of parental rights would be detrimental to the child are where (1) "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship" (i.e., the beneficial parental relationship exception); (2) the child is at least 12 years old and objects to the termination of parental rights; (3) "[t]he child is placed in a residential treatment facility, adoption is unlikely or undesirable, and continuation of parental rights will not prevent finding the child a permanent family placement if the parents cannot resume custody when residential care is no longer needed"; (4) "[t]he child [who is not under six years old or who is not a sibling group member with at least one child under six where the siblings are or should be permanently placed together] is living with a foster parent or Indian custodian who is unable or unwilling to adopt the child because of exceptional circumstances, that do not include an unwillingness to accept legal or financial responsibility for the child, but who is willing and capable of providing the child with a stable and permanent environment and the removal of the child from the physical custody of his or her foster parent or Indian custodian would be detrimental to the emotional well-being of the child"; (5) termination of parental rights would result in "a substantial interference with the child's sibling relationship"; and (6) "[t]he child is an Indian child and there is a compelling reason for determining that termination of parental rights would not be in the best interest of the child." (§ 366.26, subd. (c)(1)(B)(i)-(vi).)

18

The beneficial parental relationship exception to adoption (hereafter, the parental relationship exception) is asserted by mother in this appeal. (See fn. 2, *ante.*) Under this exception as provided in section 366.26, subdivision (c)(1)(B)(i), the juvenile court will not terminate parental rights if it " 'finds a compelling reason for determining that termination would be detrimental to the child' because '[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship.' The exception does not require proof the child has a 'primary attachment' to a parent or the parent has 'maintained day-to-day contact' with the child. [Citation.]" (*In re C.B.* (2010) 190 Cal.App.4th 102, 123-124.) But "[i]nteraction between natural parent and child will always confer some incidental benefit to the child. . . . The exception applies only where the court finds regular visits and contact have continued or developed a significant, positive, emotional attachment from child to parent." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.)

There are three " 'component determinations' " made by the juvenile court, the first two of which establish the existence of a beneficial parental relationship, and the third being the court's assessment of whether that relationship (assuming its existence) presents a compelling reason not to terminate parental rights. Those three " 'component determinations [are]—[(1)] whether the parent has maintained regular visitation, [(2)] whether a beneficial parental relationship exists, and [(3)] whether the existence of that relationship constitutes "a compelling reason for determining that termination would be detrimental to the child." ' [Citations.]" (*Caden C.*, *supra*, 34 Cal App.5th at p. 104, rev. granted; see also *In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1316 [mother demonstrated regular visitation but not a beneficial parental relationship].)[9]

---

[9] Case law discussing the parental relationship exception generally describes the juvenile court's inquiry as having "two prongs, i.e., regular visitation and benefit to the minors of continued contact with the parents that outweigh[] the benefits of adoption." (*In re I.R.* (2014) 226 Cal.App.4th 201, 212; see also *In re Anthony B.* (2015) 239

Assessment of the first component is "quantitative and relatively straightforward, asking whether visitation occurred regularly and often." (*Grace P.*, *supra*, 8 Cal.App.5th at p. 612.) It is an evaluation of "whether the parent consistently has contact with the child." (*Id.* at p. 613.) " 'Sporadic visitation is insufficient." (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 643.)

Determination of the second component of "whether the nature and extent of a particular parent-child relationship is sufficient to be deemed 'beneficial' . . . is a more involved inquiry, made on a case-by-case basis by taking into account many variables which affect the parent/child bond." (*Caden C.*, *supra*, 34 Cal App.5th at p. 104, rev. granted.) "The exception applies only where the court finds regular visits and contact have continued or developed a significant, positive, emotional attachment from child to parent." (*In re Autumn H.*, *supra*, 27 Cal.App.4th 567, 575.) In this case-specific endeavor, the court looks at such factors as "[t]he age of the child, the portion of the child's life spent in the parent's custody, the 'positive' or 'negative' effect of interaction between parent and child, and the child's particular needs." (*Id.* at p. 576.) "A showing the child derives *some benefit* from the relationship is not a sufficient ground to depart from the statutory preference for adoption. [Citation.]" (*In re Breanna S.* (2017) 8 Cal.App.5th 636, 646, italics added.) "To meet the burden of proving the section 366.26, subdivision (c)(1)(B)(i) exception the parent must show more than frequent and loving contact, an emotional bond with the child, or pleasant visits—the parent must show that he or she occupies a parental role in the life of the child. [Citation.]" (*In re I.W.*, *supra*, 180 Cal.App.4th at p. 1527.) Thus, "[n]o matter how loving and frequent the contact, and

---

Cal.App.4th 389, 396-397.) It is apparent that the parental relationship's existence—the second "component" described in *Caden C.*, *supra*, 34 Cal App.5th at page 104, rev. granted—is an assumed fact in the second "prong" of whether the benefit to the child of continued contact with the parent outweighs the benefits of adoption. For purposes of our analysis here, we will consider the three components of the exception as described in *Caden C.*

notwithstanding the existence of an 'emotional bond' with the child, 'the parents must show that they occupy "a parental role" in the child's life.' [Citations.]" (*In re K.P.* (2012) 203 Cal.App.4th 614, 621.)

In assessing the third component, assuming the parent establishes the existence of a beneficial parent-child relationship, the juvenile court must then determine whether the relationship "constitutes a 'compelling' reason to forgo termination of parental rights." (*Caden C.*, *supra*, 34 Cal App.5th at p. 105, rev. granted.) This high standard underscores that " '[a] biological parent who has failed to reunify with an adoptable child may not derail an adoption merely by showing the child would derive *some* benefit from continuing a relationship maintained during periods of visitation with the parent.' [Citation.]" (*In re Marcelo B.*, *supra*, 209 Cal.App.4th at p. 643, original italics.) In determining whether the exception applies, the juvenile court performs a balancing task of determining whether "the relationship promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be *greatly harmed*, the preference for adoption is overcome and the natural parent's rights are not terminated." (*In re Autumn H.*, *supra*, 27 Cal.App.4th at p. 575, italics added; see also *In re Anthony B.* (2015) 239 Cal.App.4th 389, 396 ["question is whether that [parental] relationship remained so significant and compelling in [the child's] life that the benefit of preserving it outweighed the stability and benefits of adoption"].)

The burden is on the parent asserting the parental relationship exception to produce evidence establishing that exception. (*In re Breanna S.*, *supra*, 8 Cal.App.5th at p. 646.) "The court's decision a parent has not satisfied this burden may be based on any

21

or all of the [three] component determinations—whether the parent has maintained regular visitation, whether a beneficial parental relationship exists, and whether the existence of that relationship constitutes 'a compelling reason for determining that termination would be detrimental to the child.' [Citations.]" (*Id.* at pp. 646-647) The parent must prove the exception by a preponderance of the evidence. (*Caden C.*, *supra*, 34 Cal App.5th at p. 104, rev. granted.)

### B. Offers of Proof Generally

Where the trial court is considering a ruling or has made a ruling that certain evidence is inadmissible, the party offering the evidence may make an "offer of proof" to explain its "substance, purpose, and relevance." (Evid. Code, § 354, subd. (a).) The " '*evidence*' " in an offer of proof shall consist of " 'testimony, writings, material objects, or other things presented to the senses.' " (*United Sav. & Loan Assn. v. Reeder Dev. Corp.* (1976) 57 Cal.App.3d 282, 294 (*United Sav. & Loan*), quoting Evid. Code, § 140.)

"An offer of proof must consist of material that is admissible, it must be specific in indicating the purpose of the testimony, the name of the witness and the content of the answer to be elicited. 'Where required, the offer of proof must consist of matter which would be admissible. If a general offer is made to prove a number of things, without segregation, and it includes some inadmissible matter, the entire offer may be rejected. . . . [¶] " . . . [¶] 'The offer of proof must be *specific* in its indication of the purpose of the testimony, the name of the witness, and the content of the answer to be elicited. The judge may properly reject a general or vague offer which does not indicate with precision the evidence to be presented and the witnesses who are to give it . . . .' [Citation.]" (*Semsch v. Henry Mayo Newhall Memorial Hospital* (1985) 171 Cal.App.3d 162, 167-168, original italics (*Semsch*); see also Wegner, et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group, 2020), § 8:3436, p. 8G-31 ["offer of proof should identify the specific evidence being offered (e.g., 'Witness X will testify that he heard the defendant state . . .'); and that evidence must be admissible"].) A proper offer

of proof must " 'set forth the actual evidence to be produced' " and the " ' "substance, purpose, and relevance of the . . . evidence" ' " (*Bowman v. Wyatt* (2010) 186 Cal.App.4th 286, 329 (*Bowman*); see also *In re Mark C.* (1992) 7 Cal.App.4th 433, 445 [father had burden in challenging exclusion of expert testimony at jurisdiction/disposition hearing "to make known to the court the substance, purpose, and relevance of the evidence"].)  A "vague or nebulous" offer of proof as to what testimony would be elicited from the witness is not sufficient.  (*People v. Sperl* (1976) 54 Cal.App.3d 640, 657; see also *People v. Carlin* (2007) 150 Cal.App.4th 322, 334 (*Carlin*) ["trial court may reject a general or vague offer of proof that does not specify the testimony to be offered by the proposed witness"].)

A proper offer of proof must identify the substance of the evidence to be presented, not merely contain a recitation of facts  "The substance of evidence to be set forth in a valid offer of proof means the testimony of specific witnesses, writings, material objects, or other things presented to the senses, to be introduced to prove the existence or nonexistence of a fact in issue."  (*United Sav. & Loan*, *supra*, 57 Cal.App.3d at p. 294.)  Thus, for example, in a case involving an injured motorcyclist, it was held that the trial court properly excluded testimony from a defense traffic safety expert concerning his opinions " 'about what [he] would expect the perception reaction time of the motorcyclist to be, and based on the research what [the expert] would expect him to do when faced with an emergency intrusion,' . . . [and about] what [he] would expect of a normal motorcycle rider operating in a normal manner to do based on research about how motorcyclists behave.' " (*Bowman*, *supra*, 186 Cal.App.4th at p. 328.)  The appellate court concluded that the defendant's offer of proof was deficient because it did not " 'set forth the actual evidence to be produced' " and the " ' "substance, purpose, and relevance of the excluded evidence," ' " because the defendant's proffer did not include foundational facts such as the distance between the plaintiff and the defendant when the defendant entered the intersection, or research that a reasonable motorcyclist traveling at

the plaintiff's speed could have avoided colliding with the defendant's truck. (*Id.* at p. 329.)

### C. Parent's Offer of Proof in Support of Adoption Exception

The above principles concerning offers of proof generally under Evidence Code section 354 are relevant to an offer of proof required in juvenile dependency proceedings. Although a parent may assert one or more of the statutory exceptions to adoption discussed in section A.2., *ante*, his or her right to a contested evidentiary hearing to establish such exception is not automatic. As discussed below, case law, beginning with *In re Jeanette V.* (1998) 68 Cal.App.4th 811 (*Jeanette V.*)), has established that the juvenile court—at least in the context of the parent claiming an exception to adoption at a 366.26 hearing[10]—may require, without violating due process, that the parent provide an offer of proof in support of the adoption exception before setting a contested hearing. (*Id.* at pp. 816-817; see also *Grace P.*, *supra*, 8 Cal.App.5th at p. 612; *Tamika T.*, *supra*, 97 Cal.App.4th at p. 1122.)

---

[10] Although a parent in general has a right to due process in dependency proceedings, " 'due process "is a flexible concept which depends upon the circumstances and a balancing of various factors." [Citations.] . . . We look to "the private interest that will be affected by the agency's action, the risk of an erroneous deprivation of that interest, the interest in informing parents of the basis for and consequences of the action and in enabling them to present their side of the story, and the agency's interest in expeditious decisionmaking as affected by the burden caused by an additional procedural requirement." [Citation.] Accordingly, our courts have recognized that "[d]ifferent levels of due process protection apply at different stages of dependency proceedings." ' [Citation.]" (*In re T.S.* (2020) 52 Cal.App.5th 503, 515 (*T.S.*).) Thus, the juvenile court may require an offer of proof to trigger a parent's right to a contested 366.26 hearing in which he or she claims an exception to adoption. (*Tamika T.*, *supra*, 97 Cal.App.4th at p. 1122.) But at an earlier stage of dependency proceedings, the court may not, without violating due process, condition a contested hearing that may result in the termination of family reunification services upon the parent's making an offer of proof. (See *In re James Q.* (2000) 81 Cal.App.4th 255, 268 [requesting offer of proof at section 366.21 review hearing violated due process because "[r]eview hearings are critical proceedings" at which "a parent may be denied further reunification services"].)

### 1.    *In re Jeanette V.*

In *Jeanette V.*, *supra*, 68 Cal.App.4th 811, the father appealed from an order after a 366.26 hearing terminating parental rights, contending that his constitutional or statutory due process rights were violated because the juvenile court did not permit an evidentiary hearing concerning the parental relationship exception.  (*Id.*at pp. 813, 815, 817.)  At the May 2008 hearing under section 366.26, the mother's attorney requested a hearing on the parental relationship exception.  (*Id.* at pp. 814-815.)  Her counsel, in response to the agency's argument that the mother could not establish regular visitation, made an offer of proof that she had recently commenced visiting her child, who had referred to her as " 'Mommy.' "  (*Id.* at p. 815.)  The juvenile court held that it would serve no purpose to hold a contested hearing as to the mother's claims.  (*Ibid.*)  The father raised an argument similar to the mother's, claiming that he should be permitted to cross-examine the social workers concerning the content of their reports regarding his earlier visitation of the minor.  (*Ibid.*)  The reports disclosed, inter alia, that the father had not visited the child at all in 1997, and that he had not visited or contacted the child since at least February 1996, i.e., more than two years prior to the 366.26 hearing.  (*Ibid.*)  "The court impliedly overruled [the father's] objection, received into evidence . . . [the agency's] reports, and terminated [the father's] parental rights."  (*Ibid.*)

The appellate court affirmed.  It observed that "the admissibility of social worker reports [under section 366.26] is not expressly conditioned upon availability of the author for cross-examination.  [Citations.]" (*Jeanette V.*, *supra*, 68 Cal.App.4th at p. 816.).  But the court acknowledged, "Of course a parent has a right to 'due process' at the hearing under section 366.26 which results in the actual termination of parental rights.  This requires, in particular circumstances, a 'meaningful opportunity to cross-examine and controvert the contents of the [agency's] report.'  [Citations.]  But due process is not synonymous with full-fledged cross-examination rights.  [Citation.]  Due process is a flexible concept which depends upon the circumstances and a balancing of various

factors. [Citation.] The due process right to present evidence is limited to relevant evidence of significant probative value to the issue before the court. [Citations.] Even where cross-examination is involved, the trial court may properly request an offer of proof if an entire line of cross-examination appears to the court to be irrelevant to the issue before the court. [Citations.]" (*Id.* at pp. 816-817.) The court in *Jeanette V.* concluded that there was no error in denying the father the right to cross-examine the caseworkers concerning their reports, reasoning that "[the father's] counsel could not deny [the father's] failure to satisfy the 'maintain regular visitation and contact' element, and could only suggest that cross-examination would reveal something about [the father's] visitation during an unspecified earlier period." (*Id.* at p. 817.)

### 2. *In re Tamika T.*

In *Tamika T.*, *supra*, 97 Cal.App.4th 1114, the mother challenged the juvenile court's order denying a contested 366.26 hearing after she had submitted an offer of proof in support of the parental relationship exception. (*Id.* at p. 1116.) The mother, who had a substance abuse problem, had received more than a year of reunification services. (*Id.* at pp. 1117-1118.) After the mother had relapsed several times, the juvenile court in August 1999 terminated services and set a 366.26 hearing. (*Id.* at pp. 1117-1118.) The court continued that hearing for more than a year because of the mother's whereabouts being unknown. (*Id.* at p. 1118.) The mother appeared in court for a June 2001 hearing, stating that she was then living in Denver, Colorado; her attorney requested a contested hearing. (*Ibid.*) The juvenile court scheduled the hearing for two months later, conditioned on the mother providing the court with an offer of proof. (*Ibid.*)

At the August 2001 366.26 hearing, the mother's offer of proof was as follows: " 'Mother has maintained an emotional bond with the minor. She has written the minor several times recently . . . . The child is 7 years old . . . . [She] developed a strong bond prior to the removal [in 1997] of the child from her care. And it would be in the best interests of the minor to continue to have contact with the mother. This isn't an infant

26

who's going to forget the contact and the bond that was developed by the mother and the minor.' " (*Tamika T.*, *supra*, 97 Cal.App.4th at pp 1118-1119.) Counsel stated that the mother had last visited the minor in February 2000, 18 months before the 366.26 hearing. (*Id.* at p. 1119.) The juvenile court denied the mother's request for a contested hearing, concluding that she had made no showing rebutting the minor's adoptability, and her offer of proof had not proposed evidence showing regular visitation that was a requisite component of the parental relationship exception. (*Ibid.*)

On appeal, the mother argued that, even though a due process right to present evidence "is limited to relevant evidence of significant probative value and that if she proffered irrelevant evidence 'on the issue being contested, the court could properly exclude such evidence,' " the juvenile court could not require her to first make an offer of proof. (*Tamika T.*, *supra*, 97 Cal.App.4th at p. 1121.) Following *Jeanette V.*, *supra*, 68 Cal.App.4th at pages 816 to 817, the *Tamika T.* court rejected the mother's contention, holding that the juvenile court had not violated the mother's due process rights by conditioning a contested hearing upon the mother's making an offer of proof in support of the parental relationship exception. (*Tamika T., supra,* at p. 1121.) In determining it to have been appropriate for the juvenile court to have insisted upon an offer of proof, the appellate court concluded that given the facts of the case, "the trial court could reasonably [have been] skeptical whether [the] mother could offer probative evidence on the . . . exception." (*Ibid.*) Although the mother on appeal did "not contend that her offer of proof was sufficient to trigger a contested hearing," she argued nonetheless that "her due process right to present evidence at a section 366.26 hearing *cannot* first be put to the test of an offer of proof." (*Ibid.*, original italics.) The court rejected the mother's argument. It reasoned, "Because due process is . . . a flexible concept dependent on the circumstances, the court can require an offer of proof to insure that before limited judicial and attorney resources are committed to a hearing on the issue, [the] mother had evidence of significant probative value. If due process does not permit a parent to introduce

27

irrelevant evidence, due process does not require a court to hold a contested hearing if it is not convinced the parent will present relevant evidence on the issue he or she seeks to contest. The trial court can therefore exercise its power to request an offer of proof to clearly identify the contested issue(s) so it can determine whether a parent's representation is sufficient to warrant a hearing involving presentation of evidence and confrontation and cross-examination of witnesses." (*Id.* at 1122; see also *In re Earl L.* (2004) 121 Cal.App.4th 1050, 1053 [juvenile court has discretion to require party asserting sibling relationship exception to make an offer of proof clearly identifying the contested issues].)

The *Tamika T.* court also explained that a parent's generalized showing is an insufficient offer of proof. "A proper offer of proof gives the trial court an opportunity to determine if, in fact, there really is a contested issue of fact. The offer of proof must be specific, setting forth the actual evidence to be produced, not merely the facts or issues to be addressed and argued. If the trial court finds the offer of proof insufficient and declines to hold a contested hearing, the issue is preserved for appeal so that a reviewing court can determine error and assess prejudice. [Citation.] This procedure adequately protects a parent's rights." (*Tamika T.*, *supra*, 97 Cal.App.4th at p. 1124.)[11]

### 3. *In re Grace P.*

In *Grace P.*, *supra*, 8 Cal.App.5th 605, the father appealed from the juvenile court's order after a 366.26 hearing (1) finding that the parental relationship exception did not apply with respect to his six-year-old daughter, Grace, and her two younger brothers, and (2) denying him a contested hearing on the exception after the father made an offer of

---

[11] As the appellate court noted, the mother did not claim that her offer of proof was sufficient to trigger a contested hearing; rather, she argued that the court's requiring her to present an offer of proof as a precondition to allowing her to present evidence at a 366.26 hearing abridged her due process rights. (*Tamika T.*, *supra*, 97 Cal.App.4th at p. 1121.) Since the legal sufficiency of the offer of proof was not argued by mother, *Tamika T.*'s discussion of the requirements of a valid offer of proof is arguably dicta.

proof. (*Id.* at pp. 608-609.) In that offer of proof, the father indicated that he would provide testimony regarding his regular visitation with the three children, including how he interacted with them during the visits and his children's perception of father as a parent. (*Id.* at p. 610.) The juvenile court found that the father's offer of proof was inadequate to require a contested hearing. (*Id.* at p. 611.)

The appellate court reversed, holding that the father's offer of proof was sufficient to require a contested hearing. (*Grace P.*, *supra*, 8 Cal.App.5th at pp. 613-615.) It observed that a parent has due process rights at a 366.26 hearing involving the termination of parental rights, including "a meaningful opportunity to be heard, present evidence, and confront witnesses. However, these procedural rights are subject to evidentiary principles." (*Id.* at p. 612.) Quoting from *Tamika T.*, *supra*, 97 Cal.App.4th at page 1122, the *Grace P.* court reiterated that " 'due process does not require a court to hold a contested hearing if it is not convinced the parent will present relevant evidence on the issue he or she seeks to contest.' [Citation.] 'The trial court can therefore exercise its power to request an offer of proof to clearly identify the contested issue(s) so it can determine whether a parent's representation is sufficient to warrant a hearing involving presentation of evidence and confrontation and cross-examination of witnesses.' [Citation.]" (*Grace P.*, *supra*, at p. 612.) The *Grace P.* court, again quoting from and following *Tamika T.*, *supra*, at page 1124, specified that "[t]he parent's offer of proof 'must be specific, setting forth the actual evidence to be produced, not merely the facts or issues to be addressed and argued.' [Citation.]" (*Grace P.*, *supra*, at p. 612.) But the appellate court encouraged the juvenile court to exercise restraint in denying a contested hearing. It held that because a determination of whether the parental relationship exception applies "requires . . . [a] careful assessment of the child's relationship with the parent" (*id.* at p. 614), "the juvenile court *must take caution* before denying a contested hearing on this issue when a parent has clearly maintained regular contact with the child" (*id.* at p. 615, italics added).

### D.     Standard of Review

A determination of the appropriate standard of review requires that we first ascertain what is, and what is not, being asserted on appeal. In the ordinary appeal from an order after a 366.26 hearing, a finding by the juvenile court based upon clear and convincing evidence that the child is likely to be adopted is reviewed for substantial evidence. (*In re Erik P.* (2002) 104 Cal.App.4th 395, 400.) Review of a court's determination of the applicability of the parental relationship exception under section 366.26 is governed by a hybrid standard under which the court's determination (1) regarding the existence of a beneficial parental relationship is reviewed for substantial evidence; and (2) as to whether the existence of the parental relationship constitutes a compelling reason to conclude that termination of parental rights would be detrimental to the child is reviewed for abuse of discretion. (*In re Bailey J.*, *supra*, 189 Cal.App.4th at pp. 1314-1315.)

Here, however, mother does not challenge on appeal the court's finding at the 366.26 hearing that the minor was adoptable. Moreover, mother does not challenge the court's implicit conclusion at the 366.26 hearing—after denying mother's request for a contested hearing concerning the parental relationship exception to adoption—that the exception did not apply in mother's case. Rather, the sole challenge raised on appeal by mother is whether the court erred in denying her request for a contested hearing after she submitted an offer of proof concerning the parental relationship exception.

In her opening brief, mother did not address the applicable standard of review of a juvenile court order denying a contested hearing on a statutory exception to adoption after a parent has made an offer of proof. (See *People v. Jackson* (2005) 128 Cal.App.4th 1009, 1018 [standard of review "is the compass that guides the appellate court to its decision"].) The Department contends that the applicable standard of review here for the denial of an evidentiary hearing after an offer of proof is whether the trial court abused its

discretion. In her reply brief, mother disagrees, asserting that this court must conduct a de novo review of the juvenile court's denial of a contested hearing.

As stated by the court in *Grace P.*, the denial of a contested hearing by the juvenile court is subject to appellate review for abuse of discretion. (*Grace P.*, *supra*, 8 Cal.App.5th at p. 611.) Further support for the application of the abuse of discretion standard of review here is found in *In re A.B.* (2014) 230 Cal.App.4th 1420 (*A.B.*). There, the appellate court affirmed the juvenile court's denial of an evidentiary hearing on the mother's requests for an agency home visit within three months of the child's placement with a noncustodial parent (see section 361.2, subd. (b)(2)) and for reunification services. In performing that review, the *A.B.* court held that the juvenile court correctly determined that the mother's offer of proof did not meet the *Tamika T.* requirements that the proffer be specific and contain actual evidence. (*A.B.*, *supra*, at p. 1441.) In so holding, the court held that the juvenile court's conclusion that the offer of proof was insufficient to warrant an evidentiary hearing would be reviewed for abuse of discretion. (*Id.* at p. 1434; see also *Ingrid E. v. Superior Court* (1999) 75 Cal.App.4th 751, 759 (*Ingrid E.*) [juvenile court abused its discretion by denying mother's request for a contested evidentiary review hearing regarding adjudication of minors as dependents and termination of reunification services after she made detailed showing of proposed witness examination]; cf *Adler v. Elphick* (1986) 184 Cal.App.3d 642, 650 [trial court exercises its "exclusive discretion to analyze and determine the evidentiary value of an offer of proof under Evidence Code section 352"].) "An abuse of discretion occurs when the juvenile court has exceeded the bounds of reason by making an arbitrary, capricious or patently absurd determination. [Citation.]" (*In re Marcelo B.*, *supra*, 209 Cal.App.4th at p. 642, quoting and citing *In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)

**E.      The Juvenile Court Should Further Consider Its Denial of a Contested Hearing**

Mother contends that the court erred in denying her request for a contested hearing.  She argues that her written offer of proof was sufficient both in its scope and in its presentation of relevant and admissible evidence to establish the parental relationship exception.  Mother argues that she was required to, and did, include evidence in her proffer addressing the first two components of the exception, i.e., regular contact and the existence of a beneficial relationship.  She contends that she was not required in her offer of proof to address the third component of whether, on balance, the parent-child relationship presented to the court a compelling reason to forgo adoption.  She argues further that the offer of proof was specific enough to warrant a hearing on the parental relationship exception.

The Department responds that mother's offer of proof did not contain "relevant, probative, and admissible evidence with the specificity required by *Tamika T.* and *Jeanette V.*"  In a supplemental letter brief, the Department argues further that mother was required in her offer of proof to propose evidence that "not only would establish the existence of a beneficial parent-child relationship, but also prove that this relationship was a compelling reason that termination of parental rights would be detrimental to [the minor], and that maintenance of that relationship would benefit [the minor] significantly enough to outweigh the stability and permanence that adoption would provide him."

### 1.      *Scope of Offer of Proof*

We address initially the scope of the offer of proof required in support of the parental relationship exception.  Mother argues that her offer of proof needed to show evidence regarding only two of the three components of the exception (see *Caden C.*, *supra*, 34 Cal App.5th at p. 104, rev. granted), namely, regular visitation and the existence of a beneficial parent-child relationship.  Mother argues that she was not required to submit an offer of proof concerning the third component, i.e., the court's discretionary

determination of whether, based upon a balancing of the quality and strength of the parent-child relationship against the security afforded to the minor by a new family, the preference for adoption has been overcome because the "severing [of] the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed." (*In re Autumn H.*, *supra*, 27 Cal.App.4th at p. 575.)

Although the appellate courts in the three offer-of-proof cases discussed at length above provide no direct guidance on this question, a close review of the cases suggests support for mother's position. In *Jeanette V.*, *supra*, 68 Cal.App.4th at pages 814-815, the reviewing court focused on the visitation and benefit aspects of the mother's offer of proof below, before concluding that the reasoning that supported the juvenile court's rejection of a contested hearing for the mother applied equally to the appellant father's position. However, because the appellate court's conclusion that a contested hearing was properly denied was founded upon a clear record that the father could not establish the first component. i.e., regular visitation (*id.* at p. 817), it did not specifically address whether the father was required to address all three components of the exception in his offer of proof.

In *Tamika T.*, *supra*, 97 Cal.App.4th at pages 1118-1119, the juvenile court rejected the mother's offer of proof based upon her failure to rebut the evidence that the mother had had no contact with the child (except for two letters) for one and one-half years, thereby failing to meet a minimum showing of regular visitation. Significantly, because the mother did "not contend her offer of proof was sufficient to trigger a contested hearing" (*id.* at p. 1121), *Tamika T.*'s focus concerned the rejection of the mother's position that conditioning a contested hearing upon the making of an offer of proof was of itself a violation of her right to due process (*id.* at pp. 1120-1123). The court in *Tamika T.* did not discuss whether a proper offer of proof required the parent to address all three components of the parental relationship exception.

And in *Grace P.*, *supra*, 8 Cal.App.5th at page 610, the father's offer of proof, deemed deficient by the trial court, included statements concerning his regular visits with the children, his activities with them, that they " 'call[ed] him papa . . . [and] perceive[d] him in a parental role.' " The offer of proof thus addressed the first two components of the parental relationship exception, i.e., regular visitation and the existence of the beneficial parental relationship.

Thus, none of the three cases discussed whether the parent's offer of proof must include evidence concerning whether preservation of the parent-child relationship "constitutes a 'compelling' reason to forgo termination of parental rights." (*Caden C.*, *supra*, 34 Cal App.5th at p. 105, rev. granted.) But the third component of the exception involves "a 'quintessentially' discretionary decision, which calls for the juvenile court to determine the *importance* of the relationship in terms of the detrimental impact that its severance can be expected to have on the child and to weigh that against the benefit to the child of adoption. [Citation.]" (*In re Bailey J.*, 189 Cal.App.4th at p. 1315.) Thus, if the parent's offer of proof addresses regular visitation and the existence of a beneficial parent-child relationship, it is for the court to then weigh the importance of that relationship against the benefits of adoption. Nothing more should be required of the parent to gain a contested hearing. Further, a requirement that the parent's offer of proof provide evidence addressing the juvenile court's detriment/benefit balancing efforts would provide an uncertain standard. In assessing the parent's offer of proof, how much evidence showing detriment to the child as a result of termination would be sufficient to require a contested hearing? And if the parent were required to show in his or her proffer that the parent-child relationship presented a *compelling reason* to forgo adoption, it would be a very rare case indeed in which a parent's offer of proof would be found sufficient to warrant a contested hearing. We conclude that the parent's offer of proof

34

need only provide relevant and admissible evidence addressing regular visitation and the existence of a beneficial parent-child relationship.[12]

Here, mother offered to present evidence concerning her visitation with the minor. Indeed, as to the first component of the parental relationship exception, the Department conceded below that "mother [had] maintained regular visitation with [the minor]." Mother also offered to provide evidence concerning the nature and extent of their relationship. Mother's offer of proof was therefore sufficient in scope.

### 2. *Legal Sufficiency of Mother's Offer of Proof*

It is clear, as discussed above, that under *Jeanette V.*, *supra*, 68 Cal.App.4th 811 and its progeny, a parent asserting an exception to adoption at a 366.26 hearing is not automatically entitled to a hearing, and the juvenile court may require him or her to make an offer of proof demonstrating that the parent will present specific evidence to support the claimed exception. (*Tamika T.*, *supra*, 97 Cal.App.4th at pp. 1121-1122.) That "offer of proof must be specific, setting forth the actual evidence to be produced, not merely the facts or issues to be addressed and argued." (*Id.* at p. 1124.) However, what is not clear from *Tamika T.* and *Grace P.* are the standards for determining whether the parent's offer of proof meets the threshold to require the court to order a contested hearing.

---

**12** It is clear that a parent may not assert the parental relationship exception "simply by demonstrating some benefit to the child from a continued relationship with the parent, or some detriment from termination of parental rights." (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1349.) In concluding that the parent's offer of proof need not address the third component of the exception, we emphasize that such determination is strictly within the purview of the juvenile court because the "finding that the relationship is a 'compelling reason' for finding detriment to the child is based on the facts but is not primarily a factual issue. It is, instead, a 'quintessentially' discretionary decision, which calls for the juvenile court to determine the importance of the relationship in terms of the detrimental impact that its severance can be expected to have on the child and to weigh that against the benefit to the child of adoption. [Citation.]" (*In re Bailey J.*, *supra*, 189 Cal.App.4th at p. 1315.)

The offer of proof must consist of " 'testimony, writings, material objects, or other things presented to the senses.' " (*United Sav. & Loan*, *supra*, 57 Cal.App.3d at p. 294, quoting Evid. Code, § 140.)  It may not consist of simply "the *substance* of facts to be proved . . . , since *facts* do not constitute *evidence*." (*Ibid.*, original italics.)  The material in the offer of proof must be admissible, and it " 'must be *specific* in its indication of the purpose of the testimony, the name of the witness, and the content of the answer to be elicited.' " (*Semsch*, *supra*, 171 Cal.App.3d at p. 167, original italics; see also *People v. Foss* (2007) 155 Cal.App.4th 113, 128 [offer of proof may not be "conclusory"]; *Carlin*, *supra*, 150 Cal.App.4th at p. 334 [offer of proof may not be "general or vague"].)

We apply these same principles within the context of a dependency case involving a parent's offer of proof concerning an exception to adoption.  It may be readily concluded that, for example, an offer of proof containing the assertion of the *fact* that the parent had a close parent-child bond with the minor—without identification of a witness or witnesses who would so testify to that fact—would not be sufficient.  (*United Sav. & Loan*, *supra*, 57 Cal.App.3d at p. 294.)  Similarly, a proffer identifying a witness who would testify to a close parent-child bond, without including enough specifics of the substance of that testimony to establish both that the witness has evidence to offer and that he or she is competent to so testify, would also not meet the threshold of a valid offer of proof.  (*Bowman*, *supra*, 186 Cal.App.4th at p. 329; *Semsch*, *supra*, 171 Cal.App.3d at p. 167.)  And a proffer that does not include a showing of the relevance of the proposed evidence is likewise insufficient.  (*Bowman*, *supra*, at p. 329.)

Mother's written offer of proof in this case identified nine witnesses she proposed to present at the hearing, namely, mother, Janet B. (maternal grandmother), Robert B. (maternal grandfather), Ar. B. (minor's sister), Al. B. (minor's sister), Michael B. (mother's acquaintance), Brittney O. (member of mother's support group), Katlin B.

(member of mother's support group), and Betsi Andrade (therapist of minor's sisters).[13] As discussed, *post*, mother's written offer of proof identified potential testimony from witnesses on certain topics that were plainly relevant to the first two components of the parental relationship exception. The offer of proof in some respects was quite general and therefore was arguably not in compliance with the specificity requirements of *Tamika T.*, *supra*, 97 Cal.App.4th at page 1124. But the proffer also included other material that was more specific and was arguably in compliance with *Tamika T.*

Mother relies on *Grace P.*, *supra*, 8 Cal.App.5th 605. There, the father's counsel made an offer of proof that the father " 'would testify that during his regular visits with the kids, he talks to them about school. He has on occasion redirected them with regards to behavioral issues. He brings food for the children. He also does play with them. He tells them he loves them and they do articulate that they love him as well and that the children call him papa and that they do not call anyone else papa, so he does believe that the parent-child exception applies. The children do perceive him in a parental role, and he has demonstrated parental capacity during these visits. He also believes that Grace would testify that she enjoys the visits, that she would like them to continue, and that she does see him as a father figure and would be sad if he were not her father.' " (*Id.* at p. 610.) The juvenile court denied a contested hearing, concluding that the father's offer of proof was " 'inadequate.' " (*Id.* at p. 611.) The appellate court reversed. The court held that the father's proffer had adequately addressed both issues of regular visitation and the relationship between the father and his children. (*Id.* at p. 614.) In doing so, the *Grace P.* court distinguished *Jeanette V.*, observing that, unlike the father there who had had no contact with the child for more than two years, the father in *Grace P.* had clearly

---

**13** As noted, *ante*, mother made an initial oral offer of proof at the first hearing on January 14, 2020. Mother on appeal does not specifically argue that her counsel's oral offer of proof at the January 14 hearing was sufficient, by itself or in combination with the later written offer of proof, to warrant a contested hearing.

satisfied the visitation and contact prong of the parental relationship exception. (*Grace P.*, *supra*, at pp. 613-614.)

The offer of proof in *Grace P.* was similar in some respects to the proffer by mother in this case that the juvenile court found legally insufficient. For instance, in both cases, the parent's proffer as to contact with the minor(s) was very general, the visits in *Grace P.* being described as " 'regular' " (*Grace P.*, *supra*, 8 Cal.App.5th at p. 610), and the mother here having stated that she had "maintained continuous contact and visits with [the minor] during the period of reunification." Likewise, in both instances, the offers of proof contained generalized descriptions of the relationship with the minor(s), with the father in *Grace P.* stating that " 'he ha[d] demonstrated parental capacity' " (*ibid.*), while the mother stated that she had "a true and significant mother-child relationship with [the minor]." But the father's offer of proof in *Grace P.*, unlike mother's proffer here, included a description of the father's activities and conversations with his children during visitation. (*Ibid.*)

The court in *Grace P.* concluded on the facts before it, notwithstanding the proffer's inclusion of some generalities, that the father's offer of proof was "specific, setting forth the actual evidence to be produced, not merely the facts or issues to be addressed and argued." (*Tamika T.*, *supra*, 97 Cal.App.4th at p. 1124.) Importantly, in addition to the father's offer of proof containing some detail in support of the father's claim of the parental relationship exception, the *Grace P.* court's decision can be explained in part by its view that a juvenile court's denial of a contested 366.26 hearing on a parent's claimed exception to adoption should be made with caution. (*Grace P.*, *supra*, 8 Cal.App.5th at pp. 614-615.) Noting that evaluating whether the parental relationship exception should be applied "requires the court's careful assessment of the child's relationship with the parent" (*id.* at p. 614), the appellate court held that "[b]ecause this is an individualized inquiry and parenting styles and relationships differ greatly between families, the juvenile court must take caution before denying a contested

38

hearing on this issue when a parent has clearly maintained regular contact with the child." (*Id.* at pp. 614-615.)[14]

We agree that, when the record clearly shows regular parent-child contact, "the juvenile court must take caution before denying a contested hearing" on the parental relationship exception. (*Grace P.*, *supra*, 8 Cal.App.5th at p. 615.) When the parent has addressed regular visitation and the existence of a beneficial parent-child relationship, but there is some question about the proffer's adequacy, the juvenile court should find the parent's offer of proof legally sufficient and order a contested hearing. Parents have a "fundamental liberty interest . . . in the care, custody, and management of their child [which] does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." (*Santosky v. Kramer* (1982) 455 U.S. 745, 753.) This fundamental liberty interest "may not be extinguished without due process. [Citation.]" (*In re James Q.* (2000) 81 Cal.App.4th 255, 263.) Although parents in general have a right to due process in dependency proceedings, our courts have recognized that " '[d]ifferent levels of due process protection apply at different stages of dependency proceedings.' " (*A.B.*, *supra*, 230 Cal.App.4th at p. 1436.) Thus, although a parent at a 366.26 hearing may be required to make an offer of proof to support his or her burden of establishing one of the exceptions to adoption (*Tamika T.*, *supra*, 97 Cal.App.4th at p. 1121-1122; *In re Earl L.*, *supra*, 121 Cal.App.4th at p. 1053), due process does not permit the denial of an evidentiary hearing if the parent has made a

---

[14] The court's qualifier that the juvenile court should exercise caution in "denying a hearing . . . *when a parent has clearly maintained regular contact with the child*" (*Grace P.*, *supra*, 8 Cal.App.5th at p. 615, italics added) may have been an implicit recognition of the fact that in the two cases it relied on heavily concerning the parent's obligation to make an offer of proof in support of the parental relationship exception— *Jeanette V.*, *supra*, 68 Cal.App.4th 811 and *Tamika T.*, *supra*, 97 Cal.App.4th 1114—the appellate courts upheld the denial of a contested hearing because the parent had clearly *not* maintained regular contact with the minor.

legally sufficient offer of proof in support of the exception claimed.  Nor does the fact that the stage of the section 366.26 proceeding is one in which "the focus shifts to the needs of the child for permanency and stability" (*In re Marilyn H.*, *supra*, 5 Cal.4th at p. 309) diminish the due process rights of the parent in these circumstances.  Given the stakes at issue to the parent—the potential termination of his or her parental rights—the juvenile court "*must take caution* before denying a contested hearing" on the parental relationship exception (*Grace P.*, *supra*, at p. 615, italics added), and it should construe the parent's offer of proof liberally in favor of allowing such a hearing.  (Cf. *In re Marilyn H.*, *supra*, at p. 309 [parent's petition under § 388 for change of order should "be liberally construed in favor of granting a hearing to consider the parent's request"].)

Additionally, because of this dependency context, we believe that the principle applicable to offers of proof generally that permits the rejection of an offer of proof "where it consists in part of irrelevant matter" (*Byrd v. Savage* (1963) 219 Cal.App.2d 396, 402) is not appropriate in the evaluation of a parent's offer of proof in support of an adoption exception.  If the parent's proffer is "specific, setting forth the actual evidence to be produced, not merely the facts or issues to be addressed and argued" (*Tamika T.*, *supra*, 97 Cal.App.4th at p. 1124), the parent should not be deprived of an evidentiary hearing simply because the offer of proof also includes irrelevant matter.

The Department, in supplemental briefing requested by this court, argues that because a parent has the burden of establishing the parental relationship exception, including the fact that terminating parental rights would be detrimental to the minor (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1350), "the juvenile court in this instance was entitled to set a high bar regarding the mother's offer of proof."  We find no language in *Jeanette V.*, *Tamika T.*, or *Grace P.* suggesting that the juvenile court should "set a high bar" in evaluating the legal sufficiency of the parent's offer of proof, i.e., whether it is "specific, setting forth the actual evidence to be produced."  (*Tamika T.*, *supra*, 97 Cal.App.4th at p. 1124.)  Rather, those cases hold simply that the juvenile court, if it so

chooses and without offending due process, may condition the right to a contested hearing upon the parent's submission of a legally sufficient offer of proof regarding the parental relationship exception. A parent's failure to set forth specific evidence, especially with a record negating the parent's regular visitation of the minor, will justify the denial of a hearing. There is no suggestion in the cases that the parent's offer of proof must withstand a heightened scrutiny, and such a requirement would be antithetical to the notion that a parent, assuming he or she has offered probative and admissible evidence, is entitled to a contested hearing and an opportunity to persuade the court that the parental relationship exception to adoption and the termination of parental rights should be applied.[15]

Further, the Department's contention that the juvenile court may appropriately "set a high bar" in assessing the legal sufficiency of the parent's offer of proof to determine his or her entitlement to a hearing suggests the court may conduct, without a hearing, the discretionary process of balancing the potential detriment to the minor from termination of parental rights against the benefits of adoption. We do not agree that this suggested approach is appropriate. The purpose of the juvenile court's requiring an offer of proof is to ascertain whether the parent can present relevant and admissible evidence in support of

_____

[15] A requirement that a parent meet a "high bar" in his or her offer of proof in support of an adoption exception, in addition to being a proposition unsupported under the law, is one that makes little sense in the context of the case law concerning a parent's due process right to a hearing at various procedural stages of a dependency proceeding. As we have noted (see fn. 10, *ante*), at the earlier, review hearing stage of dependency proceedings, the juvenile court may not, without violating due process, condition a contested hearing that may result in the termination of reunification services upon the parent's making an offer of proof. (See *In re James Q.*, *supra*, 81 Cal.App.4th at p. 268.) It would be anomalous, and inconsistent with principles of due process, to read *Jeanette V.* and *Tamika T.* as allowing the juvenile court to require the parent to submit an offer of proof as condition to the granting of a contested 366.26 hearing *and* to permit the court to consider the sufficiency of that proffer *under a heightened standard of scrutiny* before granting such a hearing.

his or her parental relationship exception claim. If the parent has made such a legally sufficient offer of proof, the juvenile court should order a contested hearing to afford the parent the opportunity to make a full presentation consistent with the offer of proof, and only then should the court consider all the evidence to determine, assuming proof of "the existence of a parent-child relationship so significant that its severance would cause the child detriment, . . . whether that relationship constitutes a 'compelling' reason to forgo termination of parental rights." (*Caden C.*, *supra*, 34 Cal App.5th at p. 105, rev. granted.)[16]

*T.S.*, *supra*, 52 Cal.App.5th 503 supports our conclusion that a parent's offer of proof should be viewed liberally in favor of the right to present his or her case at a contested hearing. After the children's removal from the mother's custody, and after their return to her custody with family maintenance services at the disposition hearing, the agency at the 12-month review hearing recommended that jurisdiction be terminated, sole physical custody be granted to mother, the father and mother be granted joint legal custody, and that the father receive visitation. (*Id.* at p. 511.) The father opposed the recommendation and requested a contested hearing, wishing to call witnesses in support of his request for physical custody. (*Id.* at p. 512.) In response to the court's request, the father submitted an offer of proof, indicating that a private investigator would testify that the mother "resided with a convicted felon and associated with drug dealers," and there were activities outside the house indicative of drug activity, such as " 'various people

---

[16] *Grace P.*, *supra*, 8 Cal.App.5th 605 offers an example of a case in which it is apparent that the juvenile court, in denying a contested hearing by finding the offer of proof inadequate, engaged in a discretionary balancing exercise of weighing all the evidence, including that proffered by the parent, to determine whether the parent-child relationship presented a compelling reason to not terminate parental rights. There, the juvenile court considered the father's offer of proof on its merits along with the remainder of the record, concluding that even with the father's showing, the court would ultimately find that severance of the parent-child relationship would not result in substantial detriment to the dependent children. (*Id.* at p. 610-611.)

going in the house unloading things' " (*Ibid.*) Counsel for the father also stated that he would attempt to examine the mother to confirm these observations. (*Ibid.*) The juvenile court denied a contested hearing, concluding that the offer of proof was insufficient because it proposed the introduction of irrelevant matter. (*Ibid.*)

After concluding that the juvenile court properly required the father to submit an offer of proof (*T.S.*, *supra*, 52 Cal.App.5th at p. 517), the appellate court held, quoting *Tamika T.*, *supra*, 97 Cal.App.4th at page 1124 concerning the requirements of specificity and recitation of actual evidence, that the father's offer of proof was sufficient to require a contested hearing: "[R]esponding to the court's request for an offer of proof to justify a contested hearing on custody and visitation issues, [the father's] counsel stated he would present the testimony of a private investigator who had observed arguably suspicious activity outside of [the mother's] residence. He stated the testimony would also show [the mother] resided with a convicted felon despite having been told the individual was not allowed to be around the children. This proposed evidence (as well as [the mother's] explanation of these circumstances) was relevant to the court's consideration whether jurisdiction should be terminated or whether the family required further supervision to ensure there was no substantial risk to the boys' safety. It was also relevant to the court's determination of the custody and visitation arrangement that would be in the children's best interest. Further, the offer was sufficiently specific, setting forth the observations about which the private detective would testify." (*T.S.*, *supra*, at p. 517.)

The offer of proof by the father in *T.S.*—like mother's offer of proof here—was somewhat general, such as its citation to evidence of the mother's association with drug dealers and the existence of activities outside the home that were consistent with drug use. (*T.S.*, *supra*, 52 Cal.App.5th at p. 512.) But it also included some specific information and identified particular witnesses who would offer testimony, including the observations of one witness, a private investigator. (*Id.* at p. 517.) Under these

43

circumstances, notwithstanding any failings in the proffer, the court in *T.S.* found the father's offer of proof legally sufficient. (*Ibid.*)

We find the facts in the case before us to be most closely aligned with the facts in *Grace P.* and *T.S.* And we conclude, conversely, that the facts in this case are very dissimilar to those in *Jeanette V.* and *Tamika T.*; in both cases, the parent had had little or no contact with the child for over a year, while the father in *Grace P.* and the mother here unquestionably maintained regular contact with the children/child.

The offer of proof here identified nine potential witnesses and did more than simply recite facts. (See *United Sav. & Loan*, *supra*, 57 Cal.App.3d at p. 294.)[17] Likewise, in *Grace P.* and in *T.S.*, the offers of proof identified two potential witnesses and they did not consist of a mere recitation of facts. Mother's proffer, like the one in *Grace P.,* included matters that were unquestionably relevant to the parental relationship exception. This included proposed testimony from mother regarding (1) her continuous contact with the minor; (2) her relationship with him from his birth until detention, including the love and support she gave him; (3) the activities engaged in by mother and the minor; (4) the asserted close relationship she had with him (including a proffer of photographs and videotapes that would show that closeness); and (5) the minor's statement that he wanted to return home with mother. Mother's offer of proof also included proposed testimony from others, including Janet B., the maternal grandmother, regarding the close relationship between mother and the minor and the detriment that would result from its termination; Ar. B. (the minor's seven-year-old sister) concerning the interactions between mother and the minor; Michael S., who observed the closeness of the mother-minor relationship while they were together at a residential treatment

---

[17] Portions of mother's offer of proof concerned her assertion in the juvenile court below that the sibling relationship exception to adoption applied. Since mother has expressly waived that contention on appeal (see fn. 4, *ante*), we do not address those portions of the offer of proof in our discussion here.

facility (apparently before the minor was detained); and Andrade, a licensed therapist who had provided counseling services to the minor's sisters, regarding the loss that might be experienced by the minor if parental rights were terminated.[18]

Mother's offer of proof, however, included evidentiary matters for which the relevance was not apparent or explained. And her proffer, like the father's proffer in *Grace P.*, included a significant amount of generalities or general topics, rather than being a "specific" offer of proof, "setting forth the actual evidence to be produced." (*Tamika T.*, *supra*, 97 Cal.App.4th at p. 1124.) Mother's offer of proof, for instance, did not provide any detail as to (1) the dates and nature of activities that mother participated in with the minor to which she would testify; (2) the dates and nature of mother's claimed "continuous contact" with the minor; (3) what the photographs and videotapes to be presented in mother's testimony would show about the closeness of her relationship with the minor; (4) Janet B.'s testimony regarding detriment; and (5) the foundational basis for, and the substance of, Andrade's opinions concerning the potential "sense of loss" that the minor would experience if parental rights were terminated. Mother's offer of proof therefore appears to have been compliant, in part, with *Tamika T.*'s requirement of specificity, and noncompliant in other respects. Viewing the totality of mother's offer of proof, however, it appears that, if the juvenile court were to exercise its discretion to permit mother to amend her proffer, she may have been able to cure such deficiencies.

We conclude from our careful review of the record before us that (1) mother had maintained regular contact with the minor, satisfying the first component of the parental

---

[18] Mother's offer of proof also identified as witnesses Robert B. (maternal grandfather), who would offer testimony similar to that of Janet B.; Al. B. (minor's 13 year-old sister) who would testify regarding mother's attachment with the minor; Brittney O., who would testify to mother's commitment and honesty in support group meetings with the goal of being a better mother to the minor; and Katlin B., another member of mother's support group, who would provide testimony additional to that provided by Michael S. and Brittney O.

relationship exception (see *Caden C.*, *supra*, 34 Cal App.5th at p. 104, rev. granted); (2) her written offer of proof was proper in scope in that it addressed mother's regular contact with the minor and the existence of a parent-child relationship; (3) the offer of proof contained some specifics and was thus partially compliant, but it also included substantial portions that were not compliant with the specificity requirements of *Tamika T.*, *supra*, 97 Cal.App.4th at page 1124; (4) this partial compliance found in mother's offer of proof is not dissimilar to the father's proffer in *Grace P.* found to be legally sufficient; and (5) if mother were granted leave to amend, with the benefit of the standards we have described, she may be able to cure some of the deficiencies in her offer of proof.

It is not clear from the record whether the court required that mother's offer of proof include evidence concerning the third component of the parental relationship exception, i.e., " 'whether the existence of that relationship constitutes "a compelling reason for determining that termination would be detrimental to the child" ' [citations]" (*Caden C.*, *supra*, 34 Cal App.5th at p. 104, rev. granted), which we hold is not within the scope of a parent's offer of proof. It is also not clear from the record whether the court below, in light of mother's having indisputably maintained regular contact with the minor, gave the offer of proof the liberal construction to which it was entitled under the circumstances. (*Grace P.*, *supra*, 8 Cal.App.5th at p. 615.)

We will therefore reverse the challenged order and remand the case to the juvenile court for its further consideration of the legal sufficiency of mother's offer of proof consistent with this opinion. (See *Joey W. v. Superior Court* (1992) 7 Cal.App.4th 1167, 1170 ["because this record does not show whether the court properly exercised its discretion, we remand for further proceedings"].) In conducting such further hearing, the court may consider additional argument of the parties, and, in its discretion, may allow mother the opportunity to amend her offer of proof with any specific evidence she believes she can produce that is consistent with her prior oral and written offers of proof

46

to aid the court in determining whether mother's offer of proof is "specific, setting forth the actual evidence to be produced, not merely the facts or issues to be addressed and argued" warranting a contested hearing. (*Tamika T.*, *supra*, 97 Cal.App.4th at p. 1124.) The juvenile court shall liberally construe mother's offer of proof and exercise caution in denying a contested hearing. (*Grace P.*, *supra*, 8 Cal.App.5th at p. 615.) If, after further consideration of the matter, the juvenile court denies a contested hearing, the court, in the interests of facilitating meaningful appellate review, shall specify the deficiencies in the offer of proof resulting in the denial of a hearing.

### 3.     *Harmless Error Analysis*

The Department contends that even if the juvenile court erred by denying a contested hearing on the parental relationship exception, such error was harmless. It asserts that mother's evidence proposed in her offer of proof, if introduced, would not have established that mother had a significant parental role permitting the court to find the exception to adoption applied. Given our determination that this case should be remanded for further consideration, and assuming without deciding the existence of error, we address the Department's contention that such assumed error is harmless.

As a general rule, appellate courts apply a harmless error analysis in juvenile dependency proceedings even when the error violates constitutional rights. (*In re J.P.* (2017) 15 Cal.App.5th 789, 798.) The standard applied in the dependency context is that reversal will be warranted "only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error. [Citation.]" (*In re Celine R.*, *supra*, 31 Cal.4th at p. 60.) Although the harmless error analysis applies to dependency proceedings, there are some instances in which the appellate court will reverse because, by virtue of the impact upon the record of the order being considered, a determination of whether the error was harmless cannot be properly assessed. (See, e.g., *T.S.*, *supra*, 52 Cal.App.5th at p. 518; *In re Armando L.* (2016) 1

47

Cal.App.5th 606, 620-621; *In re Brenda M.* (2008) 160 Cal.App.4th 772, 777; *Ingrid E.*, *supra*, 75 Cal.App.4th at p. 760.)

In *T.S.*, *supra*, 52 Cal.App.5th at page 517, the agency argued that any error in denying the father an evidentiary hearing on his challenge to termination of jurisdiction and an award of physical custody of the minors to the mother was harmless because "the proposed testimony was speculative and was contradicted by the social worker's and service providers' reports concerning [the mother's] home life. [Citation.]" The appellate court rejected the argument, reasoning that the agency's position, "relying exclusively on the written record, 'ignores the vital role that live testimony plays in a court's assessment of credibility and its evaluation of conflicting evidence.' " (*Id.* at p. 518.) The *T.S.* court concluded that the harmless error analysis could not—by virtue of the denial of a contested hearing—take into account the impact the father's witness (an investigator) might have had on the outcome of the proceedings. (*Ibid.*)

Likewise, in *Grace P*, *supra*, 8 Cal.App.5th at page 615, the agency argued that the father's offer of proof was in any event insufficient because it was duplicative of evidence found in agency reports. The appellate court rejected the contention. It reasoned that "[w]ithout such evidence [proffered by the father], we cannot conclude that Father was incapable of proving the exception. Without the evidence, we cannot conclude that Father's and Grace's testimony would be duplicative of the [agency's] reports." (*Ibid.*)

In *Ingrid E.*, *supra*, 75 Cal.App.4th 751, the appellate court held that it was error to deny the mother a contested review hearing to challenge the proposed termination of reunification services and the setting of a 366.26 hearing. (*Id.* at pp 755-760.) The agency nonetheless argued that any error was harmless because the juvenile court would have reached a determination adverse to the mother had it held a contested hearing. (*Id.* at p. 760.) The *Ingrid E.* rejected this argument, reasoning, "[The mother] averred that many circumstances had changed in her favor. She wanted to show that both the

48

psychologist and social worker had relied on stale information. On this record, we refuse to speculate that such examination by [the mother] at a contested hearing would be doomed to failure." (*Ibid.*; see also *In re Lesly G.* (2008) 162 Cal.App.4th 904, 916 [court concludes denial of hearing on petition for change of dependency order under § 388 was not harmless error, where appellate court could not "presume that a hearing would have been fruitless"].)

Likewise, we cannot adequately assess the impact of any error here in denying mother a contested hearing on the parental relationship exception. It cannot be determined from the record how persuasive mother and her other potential witnesses might have been in presenting evidence concerning mother's relationship with the minor, including the nature and frequency of their contacts. Similarly, it is unknown the extent to which any possible cross-examination by mother of the social worker would have offered support for the claimed exception to adoption. Furthermore, it cannot be determined what impact the evidence presented at a contested hearing would have had upon the juvenile court's discretionary weighing of the potential detriment of terminating the parent-child relationship against the benefits of adoption. Under these circumstances, we cannot conclude that any assumed error was harmless.

## III. DISPOSITION

The order of January 28, 2020, denying mother's request for a contested hearing on her claim concerning the application of the beneficial parental relationship exception to adoption is reversed. The case is remanded for further proceedings consistent with this opinion for the juvenile court to further consider whether mother has made a sufficient offer of proof to require a contested hearing concerning the beneficial parental relationship exception to adoption. Remittitur shall issue immediately upon the filing of this opinion.

_____
BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____
ELIA, ACTING P.J.

_____
DANNER, J.

*In re A.G.; DSS v. S.B.*
**H047951**

| Trial Court: | Monterey County |
| | Superior Court Nos.:  18JD000104 |

| Trial Judge: | The Honorable Heidi K. Whilden |

| Attorney for Defendant and Appellant | Leslie A. Barry |
| S.B.                  : | under appointment by the Court of |
| | Appeal for Appellant |

| Attorneys for Plaintiff and Respondent | Leslie J. Girard, |
| Monterey Department of Social & | County Counsel |
| Employment Services: | |
| | Annette M. Cutino, |
| | Deputy County Counsel |
| | William M. Litt, |
| | Deputy County Counsel |

*In re A.G..; Monterey County DSS v. S.B.*
**H047951**